**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**

**JERMAINE FAIRNOT,**

**Defendant.**

**Criminal Action No. 23-24 (JEB)**

<u>**MEMORANDUM OPINION**</u>

Defendant Jermaine Fairnot is charged in a seven-count indictment with multiple drug-trafficking and firearms offenses.  A jury trial is set for next month.  The Government moves to introduce three categories of evidence in its case-in-chief: (1) Defendant's two prior drug-trafficking convictions and one previous firearm-possession conviction, (2) text messages from his phone discussing firearms and drug sales, and (3) drugs and drug-distribution tools recovered from his Toyota Camry.  While some of this evidence is clearly relevant and admissible, other pieces are not and carry a risk of unfair prejudice that outweighs their probative value.  The Court will therefore grant the Government's Motion in part and deny it in part.

## I.    Background

On October 14, 2022, Metropolitan Police Department officers patrolling near the King-Greenleaf Recreation Center observed a group of men standing around a black Toyota Camry.  <u>See</u> ECF No. 84 (MIL) at 1–2.  When an officer illuminated the vehicle with his cruiser's spotlight, he saw a man in the driver's seat.  <u>Id.</u> at 2.  Noticing this police presence, the man and the nearby individuals dispersed.  <u>Id.</u> at 3.  Approaching the unoccupied Toyota with a flashlight, the officer saw the barrel of a handgun protruding from beneath the driver's seat.  <u>Id.</u>  The

officers then unlocked the driver's door and recovered a Smith & Wesson .40 caliber pistol.  Id.
at 4.  They proceeded to search the passenger compartment and trunk.  Id. at 5.  There, they
found mail and documents belonging to Fairnot, empty vials, and a bottle containing what was
later determined to be PCP.  Id. at 5–6.  After reviewing surveillance video, law enforcement
identified Fairnot as the sole occupant of the vehicle that night.  Id. at 7–9.  On November 3, a
warrant was issued for his arrest.  Id. at 9.

On November 9, law enforcement arrested Fairnot when he arrived at the federal
courthouse for a scheduled meeting with his probation officer.  Id.  Using a Toyota key found on
him, officers located the same Camry parked nearby and called in a canine unit to conduct a
sweep.  Id.  The subsequent search of the vehicle uncovered cocaine, additional PCP, a digital
scale, empty vials, and a .45 caliber Glock pistol.  Id. at 10–11.

The two car searches resulted in a seven-count indictment.  Four counts stem from the
October 14 search: felon in possession of a firearm, possession with intent to distribute (PWID)
PCP, PWID PCP within 1000 feet of a playground, and possession of a firearm during a drug-
trafficking offense.  See ECF No. 13 (Indictment) at 1–4.  The remaining three relate to the
November 9 search: felon in possession of a firearm, PWID cocaine, and possession of a firearm
during a drug-trafficking offense.  Id.

The Government now seeks to introduce three categories of evidence at trial: (1)
Defendant's three prior convictions — occurring between 2005 and 2021 — under Federal Rules
of Evidence 404(b) and 609; (2) text messages and call logs from his phone discussing firearms
and drug sales under Rule 404(b); and (3) a scale, empty glass vials, and 32.6 grams of PCP
recovered from his car as intrinsic to the charged crimes or, alternatively, under Rule 404(b).
See MIL at 12.

II.     **Legal Standard**

A.      Rule 404(b)

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  It is a threshold question whether the proffered evidence is "intrinsic" or "extrinsic" to the charged crime, as only extrinsic evidence requires a Rule 404(b) analysis.  United States v. McGill, 815 F.3d 846, 879 (D.C. Cir. 2016). Our Circuit has rejected the rule embraced by other courts that evidence is intrinsic just because it "completes the story of the charged crime," as "all relevant prosecution evidence explains the crime or completes the story to some extent."  Id. (cleaned up).  Intrinsic evidence, rather, "is limited to acts that are 'part of the charged offense' itself or that are 'performed contemporaneously with the charged crime. . . if they facilitate the commission of the charged crime.'"  Id. at 883 (quoting United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000)).

Extrinsic evidence, by contrast, is admissible only for other, non-propensity purposes, including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2); see also United States v. Appiah, 2020 WL 3469688, at *6 (D.D.C. June 25, 2020) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character.") (quoting United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990)).

Evidence intrinsic to the charged crime and extrinsic evidence that withstands scrutiny under Rule 404(b) may nevertheless be barred by Rule 403 if the risk of "unfair prejudice" associated with it — including the forbidden propensity inference — "substantially outweigh[s]" its probative value.  See McGill, 815 F.3d at 880 ("[E]vidence of other crimes or acts having a

3

legitimate nonpropensity purpose . . . may nevertheless contain the seeds of a forbidden propensity inference[,] . . . [and thus] Rule 403's balancing of prejudice and probativeness may still bar the introduction of [the] evidence.") (internal quotation marks omitted); United States v. Straker, 800 F.3d 570, 589 (D.C. Cir. 2015) (similar). Rule 403's "requirement that the danger of unfair prejudice substantially outweigh probative value calls on [the court], in close cases, to lean towards admitting evidence." Straker, 880 F.3d at 589.

B.    Rule 609

Federal Rule of Evidence 609 generally authorizes the admission and use of prior criminal convictions to impeach a witness, subject to certain conditions depending on the type and staleness of the prior conviction and whether the witness is the defendant in a criminal case. Felony convictions "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to the defendant," Fed. R. Evid. 609(a)(1)(B), and any conviction "must be admitted if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement." Id. 609(a)(2). In conducting the balancing test under Rule 609(a)(1)(B), a court considers, among other factors, "the nature of the crime, the time of the conviction, the similarity of the past crime to the charged crime, the importance of the defendant's testimony, and the degree to which the defendant's credibility is central to the case." United States v. Jackson, 627 F.2d 1198, 1209 (D.C. Cir. 1980). When, however, "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later [, e]vidence of the conviction is admissible only" when "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the

proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b).

## III.    Analysis

The Court separately analyzes the admissibility of Defendant's prior convictions, his text messages and call logs, and the items found in his car.

### A.    Prior Convictions

The Government first seeks to introduce three of Fairnot's past convictions: (1) a 2021 conviction for PWID PCP; (2) a 2010 conviction for attempted PWID cocaine; and (3) a 2005 conviction for unlawful possession of a firearm by a convicted felon. See MIL at 20.  It argues that the convictions demonstrate Defendant's intent, knowledge, and absence of mistake as to his possession of firearms and drugs recovered in this case. Id. at 20–23.  It alternatively intends to use the convictions for impeachment should he testify at trial. Id. at 29.

For each conviction, the Court addresses whether it is admissible under Rule 404(b) and, if not, whether it is separately admissible for impeachment under Rule 609.

#### 1.    *2021 PWID PCP Conviction*

Start with the most recent conviction.  It arose from a traffic stop in August 2018, during which Fairnot's car was searched and multiple illegal drugs and items of paraphernalia were found. Id. at 14.  In May 2021, having pleaded guilty to PWID PCP, he was sentenced to 30 months' incarceration. Id.  The Government intends to introduce "the prior certified conviction and limited excerpts from the plea hearing transcript or proffer regarding the defendant's prior possession and distribution of the drugs." Id. at 28.  Under the "well established 'two-step analysis' used in this [C]ircuit to determine the admissibility of prior bad acts," United States v. Washington, 969 F. 2d 1073, 1080 (D.C. Cir. 1992), the Court must first decide whether the

5

evidence is "probative of some material issue other than character" and then determine whether the evidence is barred by other "general strictures limiting admissibility," the most important of which is Rule 403. Id. at 1080–81.

Here, the 2021 conviction is admissible under Rule 404(b) because it is probative of Fairnot's intent and knowledge — elements directly at issue in his PWID charges. See 21 U.S.C. § 841(a)(1) ("[I]t shall be unlawful for any person knowingly or intentionally to. . . possess with intent to . . . distribute . . . a controlled substance."). Evidence that Defendant previously possessed PCP with the intent to distribute it "'has a tendency to make' it 'more probable'. . . both that he knew the nature of the substance . . . he was charged with possessing . . . and that he intended to distribute it." United States v. Douglas, 482 F.3d 591, 597 (D.C. Cir. 2007) (citing Rule 401); see also United States v. McCarson, 527 F.3d 170, 173 (D.C. Cir. 2008) (same); McGill, 815 F.3d at 884 (same); United States v. Mitchell, 49 F.3d 769, 775 (D.C. Cir. 1995) (noting that D.C. Circuit "ha[s] frequently upheld the admission of evidence regarding other drug transactions as relevant to intent in a charged drug transaction"). The probative value of the 2021 prior conviction is heightened, moreover, because PCP is a less common controlled substance, so a defendant's prior familiarity with it can be especially probative of intent and knowledge when the same drug appears again in the charged conduct.

Nor is the probative value substantially outweighed by any risk of unfair prejudice under Rule 403. The conviction is fairly recent — less than two years before the events at issue in this case — and involves the same controlled substance charged here. Because the Government plans to introduce only the certified judgment and limited plea-hearing excerpts, the risk that the jury will draw improper propensity inferences or otherwise be unduly prejudiced is also mitigated. Cf. United States v. Winstead, 890 F.3d 1082, 1086–87 (D.C. Cir. 2018) (cautioning

that elaborating on facts of past conviction might lead to greater prejudice). The conviction is therefore admissible under Rule 404(b).

2. *2010 Attempted PWID Cocaine Conviction*

Fairnot's 2010 conviction, conversely, yields a different outcome. This one stemmed from a December 2007 traffic stop of a vehicle in which he was a passenger. See MIL at 13. He was arrested for possession of an open container of alcohol and, in a search incident to arrest, found with cocaine, PCP, and a digital scale. Id. at 13–14. He subsequently pleaded guilty to one count of attempted PWID cocaine and was sentenced in January 2010. Id. The Government contends that this conviction, like the 2021 one, demonstrates Fairnot's knowledge and intent with respect to the narcotics recovered in this case. Id. at 26–28. Unlike the 2021 conviction, however, this one predated the charged conduct in this case by twelve years, raising significant staleness concerns.

In United States v. Sheffield, 832 F.3d 296 (D.C. Cir. 2016), the Court of Appeals held that a PWID PCP conviction that occurred a decade before the offense conduct at issue was sufficiently stale such that its diminished probative value was "'substantially outweighed' by the danger of unfair prejudice already inherent in the admission of prior-bad-act evidence." Id. at 308. Indeed, the Circuit has indicated that even substantially shorter intervals between offenses may render a prior distribution conviction substantially more prejudicial than probative. In United States v. Bigesby, 685 F.3d 1060 (D.C. Cir. 2012), it concluded that a six-year gap between a prior drug-trafficking conviction and the charged drug offense limited the prior conviction's probative value and thus affirmed the district court's decision to exclude it under Rule 403. Id. at 1065. Here, Fairnot's conviction — twelve years before his current arrest — is even more remote than the one deemed stale in Sheffield and twice the interval in Bigesby. It

thus bears "little evidentiary relevance to the question of [Fairnot's] knowledge in [2022] about such matters as how to acquire or to market [cocaine]," Sheffield, 832 F.3d at 307–08, but carries significant risk of unfair prejudice.  See Douglas, 482 F.3d at 601 (admission of prior PWID evidence "almost unavoidably raises the danger that the jury will improperly conclude that because [defendant] committed some other crime, he must have committed the one charged in the indictment") (quotation marks omitted).

The Government retorts that the similarity between the prior crime and the charged conduct "enhances their probative value, and diminishes any concern about [its] age."  ECF No. 97 (Gov't Reply) at 3; see also United States v. Thorne, 2020 WL 122985, at *15–17 (D.D.C. Jan. 10, 2020) (interpreting Sheffield and reaching similar conclusion).  Yet evidence that a defendant committed the same or a similar crime before can also cause "inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time,'" Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967), thus increasing the risk of unfair prejudice. Balancing these considerations, the Court finds that the probative value of the 2010 conviction is substantially outweighed by its potential for unfair prejudice and therefore excludes it under Rule 403.

The 2010 conviction is likewise inadmissible for impeachment under Rule 609(b).  More than ten years has elapsed since Fairnot's conviction and release, meaning that it is presumptively excluded under Rule 609(b) unless its probative value "substantially outweighs" its prejudicial effect — a rare circumstance under the rule.  See Fed. R. Evid. 609(b); Advisory Committee Note, 1974 Enactment, Note to Subdivision(b) ("[C]onvictions over 10 years old will be admitted very rarely and only in exceptional circumstances.").  No exceptional circumstance

exists here to justify introduction of the evidence for impeachment.  The conviction will therefore be excluded.

### 3.     *2005 Firearm Conviction*

That leaves us with the oldest conviction — from February 2005.  In that case, Defendant pleaded guilty to unlawful possession of firearm by a convicted felon and was sentenced to 37 months' incarceration.  See MIL at 13.  The Government argues that the conviction is probative of his knowledge of firearms and his lack of mistake in possessing the weapons charged, and that its probative value is especially high in a constructive-possession case like this one.  Id. at 20–23; United States v. Fields, 2019 WL 690347, at *1–2 (D.D.C. Feb. 19, 2019).  Recognizing the potential staleness problem posed by the nearly eighteen-year-old conviction, it also cites to several out-of-circuit cases where prior convictions aged between ten and nineteen years were admitted under Rule 404(b).  See Gov't Reply at 4.

Courts in this district, however, have repeatedly excluded older firearm convictions as too stale to satisfy Rule 404(b) following Sheffield.  See United States v. Zanders, 2019 WL 6329400, at *3 (D.D.C. Nov. 26, 2019) (excluding 17-year-old conviction for carrying firearm without license because "age alone is enough for the [c]ourt to discount the probative value of 404(b) evidence");  United States v. Williams, 507 F. Supp. 3d 181, 191 (D.D.C. 2020) (excluding ten-year-old gun conviction as stale under Sheffield); United States v. Williams, 2023 WL 5973993, at *5 (D.D.C. Sep. 14, 2023) (rejecting gun conviction from 23 years prior).  In addition, a defense that Fairnot somehow possessed the firearms by mistake is unlikely here.  Cf. United States v. Cassell, 292 F.3d 788, 792–95 (D.C. Cir. 2002) (admitting prior firearm convictions when firearms were recovered from defendant's uncle's apartment and defendant claimed firearms belonged to his uncle).

Weighed against this diminishing probative value is a meaningful risk of unfair prejudice. The jury may give undue weight to an old conviction and impermissibly infer that Fairnot is the type of person who possesses firearms unlawfully. The Court accordingly finds that the probative value of the 2005 firearm conviction is substantially outweighed by the danger of unfair prejudice. It is therefore excluded under Rule 403.

For the same reason that the 2010 conviction is inadmissible under Rule 609(b), the even older 2005 conviction is also inadmissible for impeachment should Fairnot testify.

B.    Text Messages

The Court turns next to the text messages and call logs from Fairnot's phone that the Government wishes to introduce. Three sets of messages are at issue here: (1) September 2022 messages about acquiring a .40-caliber Smith & Wesson firearm; (2) August 2022 messages expressing interest in purchasing an AR pistol; and (3) messages from various times in 2022 referencing marijuana distribution, including discussions of ounces and prices. See MIL at 33–37.

1.    *Messages Discussing Smith & Wesson Firearm*

In September 2022, six weeks before Fairnot's car was first searched, an individual texted Defendant offering to sell a "fold up 40" Smith & Wesson firearm, and Fairnot responded by inquiring about the price. Id. at 33. He also called the individual twice following the text exchange. Id. A .40-caliber Smith & Wesson was subsequently recovered from the Toyota Camry during the October 14 search. Id. at 4.

The Court need not conduct a Rule 404(b) analysis because these messages and the associated call logs are admissible as intrinsic evidence. Our Circuit has recognized that "in a narrow range of circumstances[,] evidence can be 'intrinsic to' the charged crime," including

when "evidence is offered as direct evidence of a fact in issue, not as circumstantial evidence requiring an inference regarding the character of the accused." United States v. Alexander, 331 F.3d 116, 126 (D.C. Cir. 2003) (cleaned up). So it is here. The messages concern Fairnot's effort to acquire a firearm that is of the same make and caliber as the one found six weeks later in his car. They tell us how Fairnot might have come to possess such a weapon and constitute direct evidence of a fact that the Government must prove — i.e., that Fairnot knowingly possessed the recovered Smith & Wesson.

Nor does Rule 403 bar these messages' admission. They are closely tied to the charged firearm, and they were exchanged only several weeks before the October 14 search. Their probative value — demonstrating possible acquisition of the exact gun at issue — is high and not substantially outweighed by any risk of unfair prejudice.

The Court also rejects Fairnot's argument that expert testimony is required to interpret these messages. See ECF No. 96 (Opp. to MIL) at ECF p. 8. "[W]here the jury is just as competent to consider and weigh the evidence as is an expert witness and just as well qualified to draw the necessary conclusions therefrom, it is improper to use [expert] evidence for the purpose." Gilmore v. Palestinian Interim Self-Gov't Auth., 843 F.3d 958, 973 (D.C. Cir. 2016) (quotation marks omitted). It does not take a Ph.D. in second-hand gun trading to figure out that when someone offers a "fold up 40 for 800" and mentions "Smith and Westen[sic]," and the Defendant says, "For how much" and "To[o] much," MIL at 33, they are discussing the sale of a .40 caliber Smith & Wesson firearm. These messages speak for themselves. The Court will permit the Government to introduce these messages and the associated call logs.

    2.   *Messages Discussing AR Pistol*

The next set of messages was exchanged in late August 2022 between Fairnot and the

same individual sending the September messages.  The individual told Fairnot that he knew someone trying to sell an "Arp," id. at 34, which the Government says means an AR pistol.  Id. at 34.  Fairnot inquired about the price but then declined the offer.  Id.  The Government wants to introduce these exchanges under Rule 404(b) because they "directly bear on the defendant's knowledge and intent with respect to the recovered firearms."  Id. at 35.

No AR pistol, however, was involved in Fairnot's charged offenses.  Negotiating over — and eventually declining to buy — an AR pistol in late August reveals little about Fairnot's intent or absence of mistake in knowingly possessing the Smith & Wesson in October or the Glock in November.  The probative value of these messages is minimal.  Rule 403 tips the balance further against admission.  Introducing conversations about a different type of firearm risks distracting the jury and invites precisely the kind of impermissible "once a gun buyer, always a gun buyer" propensity reasoning that Rule 404(b) forbids.

The Court nevertheless recognizes that these messages might be sufficiently probative to overcome the potential risk of prejudice in a narrow circumstance.  If Fairnot were to testify that he lacked familiarity with firearms in general, prior conversations about attempting to buy an AR pistol would speak directly to his acquaintance with firearms and then might be admissible as relevant rebuttal evidence under Rule 404(b).  The Government may therefore offer these messages in rebuttal only if Defendant testifies and opens the door by placing his knowledge of firearms at issue.  Otherwise, they are excluded.

### 3.    *Messages Discussing Marijuana*

The Government also wants to introduce text messages in which Fairnot purportedly offered marijuana for sale in February and July 2022.  See MIL at 36–37.  It contends that these messages are admissible under Rule 404(b) to show his intent to distribute controlled substances

in this case.  Id. at 37–38.

Even if that were true, the Court will exclude these messages under Rule 403 because their weak probative value is substantially outweighed by their prejudicial effect.  Their probative value is limited: they "involve[] a different drug" from the ones charged, there is "no clear link between the message[s] and [the places where the drugs were recovered]," and the messages are "unmoored from any physical evidence."  United States v. Green, 149 F.4th 733, 755 (D.C. Cir. 2025).  And they carry a substantial risk of unfair prejudice by suggesting, improperly, that Defendant is a habitual drug dealer.  Id. at 758–59 (Garcia, J., concurring) ("Logically, the only way a bare allegation of [Defendant's] intent to sell marijuana on one occasion could be thought relevant to show he intended to distribute other drugs on this occasion is by reasoning that [Defendant] is the type of person who intends to distribute the drugs he possesses . . . .").  Introducing uncharged and unproven marijuana sales also risks confusing the issues and causing the jury to conflate unrelated conduct with the more serious trafficking allegations involving PCP and cocaine.  The messages discussing marijuana are accordingly excluded.

C.      Items in Car

What remain for the Court to consider are items recovered from Defendant's car during the two searches: a digital scale and 56 empty vials from the October 14 search, plus eight empty vials and 32.6 grams of PCP in three vials from the November 9 search.  See MIL at 39.  The Government contends that all those items are admissible as intrinsic evidence, id. at 40, but Fairnot argues that the PCP seized on November 9 should be excluded, as he was charged only with PWID cocaine in relation to that search.  Both are partially right.

The scales and vials are clearly intrinsic evidence.  They were recovered during the very

searches that uncovered the charged narcotics, and tools of this kind are classic indicators that the drugs seized were possessed for "distribution rather than personal use." Id. at 39. Because these items were found "contemporaneously with" the drugs underlying the PWID charge and likely "facilitated the commission of the charged crime," Bowie, 232 F.3d at 929, they are admissible as intrinsic evidence.

The PCP recovered on November 9 is a different story. Because Fairnot was not charged with PWID PCP in connection with the November 9 search, the PCP is not intrinsic to the cocaine-trafficking counts arising out of that search. It does not form "part of the charged offense," nor did it facilitate the November 9 cocaine offense. Id.

While the Government cannot use this evidence to prove any charges arising out of the November 9 search, it is admissible under Rule 404(b) with respect to the October 14 PWID PCP charge. The recovery of additional PCP from the same vehicle three weeks later is probative of Fairnot's knowledge of its presence, familiarity with the substance, and absence of mistake in possessing PCP on October 14. The evidence is therefore relevant to several permissible non-propensity purposes. Rule 403 does not bar admission for this limited use. The probative value of the November PCP as to the October charge is substantial, and any risk of unfair prejudice can be mitigated by a limiting instruction directing the jury not to consider the PCP as evidence related to the November 9 cocaine offense.

## IV.    Conclusion

For the foregoing reasons, the Government's Motion will be granted in part and denied in part. A separate Order consistent with this Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  December 10, 2025