**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal Action No. 23-24 (JEB)** |
| **JERMAINE FAIRNOT,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

Awaiting retrial on an eight-count gun-and-drug indictment, Defendant Jermaine Fairnot moves to dismiss the case against him on two grounds.  First, he contends that chain-of-custody issues and weight discrepancies concerning the phencyclidine recovered from his car — which was introduced into evidence at his first trial — render that PCP evidence inadmissible.  Second, he maintains that the Government failed to preserve video surveillance footage from a nearby Metropolitan Police Department crime camera, in violation of Federal Rule of Criminal Procedure 16(a).  Because neither argument has merit nor warrants dismissal, the Court will deny the Motion.

## I.      Background

On December 18, 2025, Fairnot was charged via superseding indictment with eight counts, all relating to his alleged possession of firearms and distribution-quantity drugs in two incidents three weeks apart.  See ECF No. 113 (Superseding Indict.).  This case was first tried beginning on January 13, 2026.  Testimony at the four-day trial offered the following facts about the first incident, which is the subject of the Motion:

On the evening of October 14, 2022, officers patrolling the area around King Greenleaf Recreation Center seized, from Fairnot's car, a handgun, a plastic apple-juice bottle containing

1

PCP, and 56 glass vials used to package PCP.  See ECF No. 146 (Jan. 13 Tr.) at 108:16–19; 109:18–22, 142:3–145:4, 147:5–150:9.  All evidence was transported that night to the MPD First District station, where it was logged as received three days later.  Id. at 159:21–25; see ECF No. 145-1, Exh. 1 (PCP Custody Log) at ECF p. 1.  At the station, the PCP was placed on the drug book, see Jan. 13 Tr. at 160:2–9, and, according to MPD Detective Brian McCarthy, transferred by staff from the apple-juice bottle into glass vials.  See ECF No. 147 (Jan. 15 Tr.) at 52:9–13; 102:23–103:5.  Officers weighed the vials, reported their weight, and shipped the PCP to the Drug Enforcement Administration for testing on October 25.  Id. at 52:9–53:10; see PCP Custody Log at ECF p. 1.

DEA Senior Forensic Chemist Erin Lloyd testified that she received and tested the PCP. See ECF No. 148 (Jan. 20 Tr.) at 106:1–19.  On cross-examination, Lloyd noted a discrepancy between the gross weight (combined weight of packaging and contents) that she recorded and that reported by the officers at the First District.  Id. at 114:9–18.  She explained, however, that officers commonly, if inadvertently, report the net weight (weight of contents alone) of the evidence instead of the gross weight, and that this explanation was "consistent" with the discrepancy at hand given the closeness of the officers' purported gross figure to her net figure. Id. at 115:3–10.

As to the surveillance video, McCarthy testified that law enforcement obtained (1) video footage from the Recreation Center capturing the nearly two hours up until officers discovered the handgun and drugs in the vehicle and (2) video footage for the same time period from an MPD crime camera on the opposite side of the parking lot from where the vehicle was parked. See Jan. 13 Tr. at 197:5–12.  The footage shows Fairnot driving the vehicle to the Recreation

Center, parking it there, and going in and out of that car over the span of the two hours.  See Jan. 15 Tr. at 18:16–44:11.

On cross-examination, McCarthy testified that he did not request footage that would have captured Fairnot's vehicle leaving the lot after law enforcement seized the gun and drugs.  See Jan. 15 Tr. at 103:12–23.  He explained that this was because he did not know "what the time period [was]" for video that would have captured the vehicle's departure.  Id. at 104:1–4.

At the conclusion of the trial, the jury was unable to reach a verdict on any of the counts of the superseding indictment; as a result, a mistrial was declared.  With the retrial scheduled to begin this week, Fairnot now moves to dismiss the case.  See ECF No. 143 (MTD).

**II.      Legal Standard**

A defendant may move prior to trial to dismiss an indictment.  One basis for such a motion is a defect in the process of "discovery under Rule 16."  Fed. R. Crim P. 12(b)(3)(E). "Because a court's use of its supervisory power to dismiss an indictment directly encroaches upon the fundamental role of the grand jury, dismissal is granted only in unusual circumstances." United States v. Ballestas, 795 F.3d 138, 148 (D.C. Cir. 2015) (cleaned up).

**III.     Analysis**

In seeking dismissal, Fairnot raises two separate arguments, which the Court addresses in turn.

A.      Chain of Custody

He first asserts that an amalgam of issues relating to the chain of custody renders the recovered PCP inadmissible as evidence.  As an initial matter, Fairnot never explains why the inadmissibility of some drug evidence would warrant dismissal of the entire indictment, which also includes gun charges, at this stage.  Nor could he, as it is well established that the proper

3

remedy for inadmissible evidence is its exclusion, not dismissal of the case altogether. See

United States v. Blue, 384 U.S. 251, 255 & n.3 (1966) (holding that proper remedy for

inadmissible evidence is suppression at trial).

In any event, the issues Fairnot raises do not even counsel against admissibility of the

PCP. Because he does not clearly delineate his various contentions, it is difficult to discern the

precise contours of his arguments on that front. At various points, however, he appears to assert

that (1) the transfer of the PCP from the apple-juice bottle in which it was discovered to the six

glass vials entered into evidence constituted impermissible "tampering," MTD at ECF pp. 4–5;

(2) there are "inexplicable" weight variances in the DEA records associated with the PCP,

potentially arising out of said tampering, id.; and (3) more generally, the chain of custody was

not properly "evidenced or memorialized." Id. at ECF p. 3. We need not get mired in the weeds

to conclude that Fairnot is incorrect as a matter of law.

To begin, the existence of gaps in the chain of custody, and of resulting minor variances

in the amount of the drug, go to the weight that the factfinder might assign to the evidence, not to

its admissibility. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 n.1 (2009); United States

v. Mitchell, 816 F.3d 865, 872 (D.C. Cir. 2016). Fairnot's reliance on Novak v. District of

Columbia, 160 F.2d 588 (D.C. Cir. 1947), is misplaced, as the D.C. Circuit has "retreated" from

Novak's requirement of an unbroken chain of custody. United States v. Mejia, 597 F.3d 1329,

1335 (D.C. Cir. 2010). Of course, just as he did at the first trial, Fairnot will be able to air his

evidentiary concerns during cross-examination, but those concerns are not grounds to wipe the

case from the docket.

Fairnot's remaining "tampering" argument based on the transfer of the PCP from bottle to

vials — to the extent it is distinct from the alleged chain-of-custody issues — likewise falls

4

short.  The D.C. Circuit in <u>United States v. Haldeman</u>, 559 F.2d 31 (D.C. Cir. 1976) (*en banc*), established that real evidence is not inadmissible "because one can conjure up hypothetical possibilities that tampering occurred."  <u>Id.</u> at 109.  "Hypothetical possibility" encapsulates Fairnot's conclusory assertion that the recovered PCP "was tampered with when the substance was transferred from the original bottle to six separate vials"; nowhere is the alleged tampering specifically identified.  <u>See</u> MTD at ECF p. 4.  And mere repackaging or handling of evidence does not constitute tampering absent evidence that police were driven by "ill will, bad faith, or other evil motivation," none of which is alleged.  <u>In re Sealed Case</u>, 99 F.3d 1175, 1177 (D.C. Cir. 1996) (quotation marks omitted).

Dismissal is thus unwarranted on these grounds.

B.      <u>Rule 16</u>

Defendant's contention that the Government failed to preserve additional video footage in violation of Rule 16 is likewise unavailing.  Rule 16(a)(1)(E)(i) requires, in relevant part, that the Government produce evidence to the defense that (1) the Government has in its "possession, custody, or control" and (2) "is material to preparing the defense."  Even assuming that MPD's possession of the crime-camera footage is attributable to the prosecution, such footage is still not material.

Fairnot alleges that, absent the video, he cannot show that another person drove his vehicle away from the Recreation Center.  <u>See</u> MTD at ECF p. 5.  But the identity of the getaway driver is irrelevant to the Government's central contention that Fairnot possessed the PCP and firearm in the vehicle.  Relevant and uncontested evidence shows him driving his registered vehicle to the Center, parking it, and repeatedly entering and exiting it (alone) over two hours, immediately after which the police located the contraband.  <u>See</u> Jan. 15 Tr. at 16:11–35:8.

5

Against that backdrop, the unpreserved surveillance video would not "enable[] the defendant significantly to alter the quantum of proof in his favor," as required to establish materiality. United States v. Graham, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (quotation marks omitted).

Even in a world where Fairnot could surmount those hurdles, his ultimate ask of dismissal would be inappropriate. Absent evidence of bad faith on the Government's part, the "draconian" remedy of dismissal has been held to be too severe a sanction for failure to preserve. United States v. Vanterpool, 2026 WL 810005, at *6 (D.D.C. Mar. 24, 2026) (quoting United States v. Jones, 524 F.2d 834, 852 (D.C. Cir. 1975)). Here, bad faith is glaringly absent. Law-enforcement officers did not obtain the footage in question because they did not know the timeframe to request, see Jan. 15 Tr. at 104:1–4; they produced all the relevant evidence they did possess. Again, Fairnot will have ample opportunity to cross-examine the Government's witnesses on the investigative choices they made. Dismissal, however, is a bridge too far.

## IV.    Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order denying Defendant's Motion to Dismiss.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 27, 2026

6